REQUESTED BY: Catherine D. Lang, Property Tax Administrator
 I. INTRODUCTION
You have requested our opinion regarding certain property tax questions which have arisen subsequent to approval of the Missouri-Nebraska Boundary Compact [the "Compact"]. The Compact was adopted by the Nebraska Legislature in 1998. See 1998 Neb. Laws, LB 59. The "principal purpose" of the Compact was "to establish an identifiable compromise boundary between the States of Missouri and Nebraska. . . ." Missouri-Nebraska Boundary Compact, Article I. The Compact has been approved by the United States House of Representatives and the United States Senate, and was signed into law by the President of the United States in November of 1999. The Department of Property Tax Assessment and Taxation, which advises county assessors and taxing officials on matters relating to the assessment and collection of real property taxes, has received questions from various taxing officials regarding whether the Compact affects taxes assessed on Nebraska property prior to the effective date of the Compact. You indicate that an opinion from this office would be of assistance to your office in providing guidance to county officials facing these issues.
 II. QUESTIONS PRESENTED
Your request presents three questions:
1. Does property assessed as Nebraska real property remain as Nebraska real property for purposes of tax years prior to the effective date of the Compact?
2. Does the Compact affect pre-Compact back taxes still owing on property which was assessed as Nebraska property but which is now located in Missouri?
3. As to taxes paid on real property which was previously located in Nebraska but is now located in Missouri, does the Compact affect any refund claims for taxes paid on such property?
 III. ANALYSIS
"An interstate compact is basically an agreement between two or more states, entered into for the purpose of dealing with a problem that transcends state lines." P. Hardy, InterstateCompacts: The Ties that Bind, 2 (1982). "Interstate compacts come into existence when two or more states enact essentially identical statutes that establish and define the compact and what it is to do." Id. "Because interstate compacts are agreements entered into state law, they function simultaneously as contracts between states and as statutes within those states, and must be interpreted as such." Aveline v. Board of Probation and Parole,729 A.2d 1254, 1257 (Pa.Commw.Ct. 1999). An interstate compact "is merely an agreement between states that has received the imprimatur of Congress", and its interpretation "must be grounded and based upon the very language of the instrument." Pievsky v.Ridge, 98 F.3d 730, 733 (3d Cir. 1996). A compact is "a legal document that must be construed and applied in accordance with its terms." Texas v. New Mexico, 482 U.S. 124, 128 (1987); accordState of Nebraska v. Central Interstate Low-Level RadioactiveWaste Compact Comm'n, 187 F.3d 982, 985 (8th Cir. 1999).
Article VI of the Compact, relating to taxes, provides:
 (a) Taxes for the current year lawfully imposed by the States of Missouri or Nebraska may be levied and collected by such state or its authorized governmental subdivisions and agencies on land, jurisdiction over which is relinquished by the taxing state to the other, and any liens or other rights accrued or accruing, including the right of collection, shall be fully recognized and the county treasurers of the counties or other taxing authorities affected shall act as agents in carrying out the provisions of this article. All liens or other rights arising out of the imposition of taxes, accrued or accruing, shall be claimed or asserted within five years after this Compact becomes effective and if not so claimed or asserted shall be forever barred.
 (b) The lands, sovereignty over which is relinquished by the State of Missouri to the State of Nebraska, shall not thereafter be subject to the imposition of taxes in the State of Missouri from and after the current year. The lands, sovereignty over which is relinquished by the State of Nebraska to the State of Missouri, shall not thereafter be subject to the imposition of taxes in the State of Nebraska from and after the current year.
Your initial question is whether property assessed as Nebraska real property remains as Nebraska real property for tax years prior to the effective date of the Compact. Subsection (a) of Article VI provides that "[t]axes for the current year lawfully imposed" by Missouri and Nebraska "may be levied and collected by such state or its authorized governmental subdivisions . . . on land, jurisdiction over which is relinquished by the taxing state to the other,. . . ." Subsection (b) provides: "The lands, the sovereignty over which is relinquished by the State of Missouri to Nebraska, shall not thereafter be subject to the imposition of taxes in the State of Missouri from and after the current year." (Emphasis added). This subsection further provides: "The lands, sovereignty over which is relinquished by the State of Nebraska to the State of Missouri, shall not thereafter be subject to the imposition of taxes in the State of Nebraska after the currentyear." (Emphasis added). We believe the plain meaning of this language demonstrates that the Compact was not intended to affect the validity of taxes for years prior to the effective date of the Compact. In other words, the provisions of the Compact governing taxation were not intended to operate retroactively to impact taxes imposed by local governments in Nebraska on property which was located in Nebraska prior to the Compact's effective date.
Your second question is whether the Compact affects pre-Compact taxes still owing on property which was assessed as Nebraska property but which is now located in Missouri. Based on our response to your initial question, we conclude that the Compact does not impact the validity of taxes imposed by Nebraska governmental subdivisions on property which was located in Nebraska prior to the effective date of the Compact.
Finally, you ask whether the Compact affects any refund claims for taxes paid on real property which was previously located in Nebraska but is now located in Missouri. Again, based on our response to the previous questions, we do not believe that the Compact was intended to provide any basis upon which a refund could be claimed for taxes paid on real property previously part of Nebraska which is now part of Missouri. You indicate it has been suggested that the language providing that "[a]ll liens orother rights arising out of the imposition of taxes, accrued or accruing, shall be claimed within five years after this Compact becomes effective and if not so claimed or asserted shall be forever barred", could be construed to "apply to permit a taxpayer to assert a right to a refund of taxes paid for previous years based on the dispute over where the boundary is located." We do not believe this language can be interpreted to provide any right for a taxpayer to claim a refund, as the Compact was not intended to affect the validity of taxes imposed by Nebraska governmental subdivisions prior to the effective date of the Compact on what was, at that time, Nebraska property. Indeed, the "rights" referred to in this language appear to concern rights of the taxing authorities in Nebraska and Missouri resulting from the imposition of taxes, not "rights" of taxpayers, such as the right to claim a refund of taxes.
In addition to the foregoing, we also feel it is necessary to advise you of a Memorandum of Understanding between the Nebraska Attorney General and the Missouri Attorney General in March 1998, which addresses the tax status of lands the boundary of which was in dispute prior to the effective date of the Compact. In some instances, lands were assessed by both Nebraska and Missouri taxing officials. The Memorandum of Understanding recognizes that "there exists uncertainty as to the liability of property taxes for disputed lands on either side of the center line of the Missouri River for tax years prior to the effective date of the Compact." Memorandum at 2. It further states that "it is the intent of the parties that all claims for past property taxes levied by Missouri authorities on disputed lands west of the center line of the Missouri River be relinquished and, further, it is the intent of the parties that all claims for past property taxes levied by Nebraska taxing authorities on disputed lands on the east side of the center line of the river be relinquished;. . . ." Id. The Memorandum states the parties agree that taxing authorities in Missouri "relinquish all claims for taxes accruing prior to [the] date of Congressional approval of the Missouri-Nebraska Boundary Compact on lands on the west side of the center line of the Missouri River," and that taxing authorities in Nebraska "relinquish all claims for taxes accruing prior to [the] date of Congressional approval of the Missouri-Nebraska Boundary Compact on lands on the east side of the center line of the Missouri River." Memorandum at 3. It further states: "It is the opinion of both the Attorney General of the State of Missouri and the Attorney General of the State of Nebraska that upon passage of the Missouri-Nebraska Boundary Compact and implementation by Congress, the claims for back taxes relinquished herein would be legally uncollectable. . . ." Id.
We thought you should be aware of the Memorandum in the event your office receives inquiries regarding situations which may be impacted by the terms of the Memorandum. A copy of this Memorandum of Understanding is enclosed.
Very truly yours,
 DON STENBERG Attorney General
 L. Jay Bartel Assistant Attorney General
APPROVED BY:
DON STENBERG Attorney General